2023-1359

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

KROY IP HOLDINGS, LLC,

*Plaintiff-Appellant*

v.

GROUPON, INC.,

*Defendant-Appellee*

Appeal from the United States District Court
for the District of Delaware, No. 1:17-cv-01405-MN
The Honorable Maryellen Noreika

**BRIEF OF UNIFIED PATENTS, LLC AS AMICUS CURIAE IN SUPPORT OF GROUPON, INC'S COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

Michelle Aspen (Principal Attorney)
Jonathan Stroud
Unified Patents, LLC
4445 Willard Avenue
Suite 600
Chevy Chase, MD 20815
(559) 214-3388
(202) 805-8931

*Counsel for Amicus Curiae*

## Certificate of Interest

Pursuant to Federal Circuit Rules 27(a)(3) and 47.4, counsel for amicus curiae Unified Patents, LLC certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Unified Patents, LLC

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

The following are parent corporates for Unified Patents, LLC: UP HOLDCO INC., Unified Patents Holdings, LLC, Unified Patents Acquisition, LLC, Unified Patents Management, LLC.

No publicly held companies own 10% or more stock in Unified Patents.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

None.

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

April 25, 2025

*/s/ Michelle Aspen*
Michelle Aspen

# Table of Contents

Certificate of Interest .......... i

Table of Contents .......... iii

Table of Authorities .......... iv

Interest of Amicus Curiae .......... 1

Argument .......... 2

I. Collateral estoppel applies to the PTAB's legal conclusions .......... 2

II. Even if Applicable, the Higher-Burden Exception is Not Absolute .......... 4

III. Estoppel is necessary to prevent vexatious litigation .......... 7

IV. Conclusion .......... 10

Certificate of Compliance with Type-Volume Limitations .......... 11

Certificate of Service .......... 12

# Table of Authorities

**PAGE(S)**

**COURT CASES**

*Astoria Fed. Sav. and Loan Ass'n v. Solimino*,
501 U.S. 104 (1991) .......... 2

*Grogan v. Garner,*
498 U.S. 279 (1991) .......... 7

*Lane v Sullivan,*
900 F.2d 1247 (8th Cir. 1990) .......... 5

*Marlene Indus. Corp. v. N.L.R.B.,*
712 F.2d 1011 (6th Cir. 1983) .......... 3

*MaxLinear, Inc. v. CF CRESPE LLC,*
880 F.3d 1373 (Fed. Cir. 2018) .......... 2–3

*Microsoft Corp. v. i4i Ltd. P'ship,*
564 U.S. 91 (2011) (*Bryer, J., concurring*) .......... 4–5

*Nature Simulation Sys. Inc. v. Autodesk, Inc.,*
23 F.4th 1334 (Fed. Cir. 2022) .......... 4

*Nestle USA, Inc v. Steuben Foods, Inc.,*
884 F.3d 1350 (Fed. Cir. 2018) .......... 7

*ParkerVision, Inc. v. Qualcomm Inc.,*
116 F.4th 1345 (Fed. Cir. 2024) .......... 6–7

*Ray v. U.S.,*
152 F.3d 946, 1998 WL 161078 (Fed. Cir. Mar. 31, 1998) .......... 4

*Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG,*
856 F.3d 1019 (Fed. Cir. 2017) .......... 6

*Univ. of Tennessee v. Elliott*,
478 US 788 (1986) .......... 9, 10

*XY, LLC v. Trans Ova Genetics*,
890 F.3d 1282 (Fed. Cir. 2018) .......... 2–3, 7, 10

**ADMINISTRATIVE PROCEEDINGS**

*Lifescan, Inc. v. Facet Techs., LLC*,
IPR2023-00713, Paper 13 (PTAB Sep. 21, 2023) .......... 8

*Unified Patents, LLC v. JustService.Net LLC*,
IPR2020-01258, Paper 41 (PTAB Feb. 16, 2022) .......... 9

**STATUTES AND RULES**

35 U.S.C. § 315(b).......... 7

37 C.F.R. § 42.15(a) .......... 8

37 C.F.R. § 42.24(a)(1) .......... 8

**OTHER AUTHORITIES**

157 Cong. Rec. 3429-3430 (2011) .......... 2

157 Cong. Rec. S5375 (2011) .......... 3

M.P.E.P. 2259.......... 8

H.R. Rep. No. 112-98, pt.1 (2011) .......... 2, 4

S.Rep. No. 110-259 (2008) .......... 2

Restatement (Second) of Judgments § 28(4).......... 3

*The impact of bad patents on American business:* Hearing before the Subcomm. on Courts, Intellectual Property, and the Internet, House of Representatives, 115th Congress, (July 13, 2017) .......... 8 n.2

Mark A. Lemley & Kimberly A. Moore, *Ending Abuse of Patent Continuations* 84 B.U. L. Rev. 63 (2004) .......... 9 n.3

Cesare Righi & Timothy Simcoe, *Patenting Inventions or Inventing Patents? Continuation Practice at the USPTO*, 54(3) RAND Journal of Economics, 416 (2023). .......... 9 n.3

## INTEREST OF AMICUS CURIAE[1]

Unified Patents, LLC is a membership organization dedicated to deterring non-practicing entities ("NPEs"), particularly patent assertion entities ("PAEs"), from extracting nuisance settlements from operating companies based on likely-invalid patents. Unified acts independently from its 3,000-plus members, including Fortune 500 companies, start-ups, automakers, industry groups, cable companies, finance businesses, technology companies, open-source developers, manufacturers, and others dedicated to reducing the drain on the economy of baseless patent litigations. Unified and its counsel study the business models, financial backings, and practices of PAEs.

Unified monitors ownership data, secondary-market patent sales, demand letters, post-issuance proceedings, and patent litigation. Unified also files post-issuance challenges with both domestic and international patent offices against patents it believes are unpatentable or invalid. This includes both international and domestic administrative challenges. Thus, Unified seeks to deter the assertion of poor-quality patents.

---

[1] This brief accompanies a motion for leave. Fed. R. App. P. 29(b)(2). No parties' counsel authored this brief in whole or in part; neither party nor party counsel contributed money that was intended to fund preparing or submitting the brief; no person other than the amicus curiae or its counsel contributed money that was intended to fund preparing or submitting the brief. Fed. R. App. P. 29(a)(4).

## ARGUMENT

### I. Collateral estoppel applies to the PTAB's legal conclusions

Collateral estoppel applies to the PTAB's final decisions on invalidity. When an administrative agency acts in a judicial capacity, "the courts may take it as a given that Congress has legislated with an expectation that [issue preclusion] will apply except 'when a statutory purpose to the contrary is evident.'" *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).

With respect to PTAB proceedings, it is evident that Congress did intend the PTAB to act in a judicial capacity to provide an alternative for expensive litigation involving patents of dubious quality. See H.R. Rep. 112-98, pt.1, p. 48 (2011) (AIA proceedings are "quick and cost effective alternatives to litigation"); *see also* S.Rep. No. 110-259, p. 20 (2008) (IPR is "a quick, inexpensive, and reliable alternative to district court litigation"); 157 Cong. Rec. 3429-3430 (2011) (remarks of Sen. Kyl) ("Among the reforms that are expected to expedite these proceedings [is] the shift from an examinational to an adjudicative model").

This used to be settled law. As Groupon points out, a previous panel confirmed that estoppel applies from AIA trials to district court proceedings despite the difference in burdens in *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 at 1294–95 (Fed. Cir. 2018). Under this framework, "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the

question of invalidity, collateral estoppel applies." *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018).

The present panel distinguishes *XY* on the grounds that the claims involved were the same and therefore, simply didn't exist anymore. *Slip Op.* at 7. But then *XY* would have not addressed estoppel; instead, *XY* would have declared the issue moot, as the dissent discussed. 890 F.3d at 1294. Nothing in *XY* implies that estoppel from PTAB invalidity judgments is so narrow. The factors should be followed the same way for both district court and PTAB invalidity rulings, by applying estoppel to identical legal issues, not just identical claims.

In narrowing *XY*, the panel relies on precedent citing the non-binding different-burden exception, provided in the Restatement (Second) of Judgments § 28(4). But the existence of different burdens is only "a factor" for the court to consider in determining whether estoppel applies. *Marlene Indus. Corp. v. N.L.R.B.*, 712 F.2d 1011, 1017 (6th Cir. 1983). For the reasons discussed in this and the following section, and as held in *XY*, the different-burden exception does not apply to legal conclusions of the PTAB.

Application of the different-burden exception is illogical given the basis for the different standards of proof. A higher standard of proof is imposed on district court defendants "in deference to the presumed correctness of the PTO's decision" to issue a patent. 157 Cong. Rec. S5375 (remarks of Michael W. McConnell); *see*

*also Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 23 F. 4th 1334, 1343 (Fed. Cir. 2022). But the agency does not owe deference to itself. Therefore, the lower standard applies to AIA invalidity, giving the Patent Office the power to correct mistakes and "restore confidence in the presumption of validity that comes with issued patents." H.R. Rep. No. 112-98, pt. 1, pp. 45, 48 (2011).

Indeed, applying this exception undermines the deference due to the PTO by the courts in matters of validity, as it would requires courts to ignore definite proof that the PTO *did* make a mistake and *would* revise its decision to issue the claims if given the opportunity. While courts cannot change the standard of proof before them, they can and should apply collateral estoppel based on identical issues fully briefed before and decided by the expert agency.

## II. Even if Applicable, the Higher-Burden Exception is Not Absolute

Even assuming *arguendo* that estoppel is not a given, there will still be some cases where estoppel is appropriate. While "a change in the burden of proof **may** vitiate a prior judgment," the facts of a given case may still make estoppel appropriate. *Ray v. U.S.*, 152 F.3d 946, 1998 WL 161078 at *2 (Fed. Cir. Mar. 31, 1998) (emphasis added). At the very least, a case-by-case inquiry is appropriate to decide whether estoppel should apply for two reasons.

First, "[w]here the ultimate question of patent validity turns on the correct answer to legal questions—what these subsidiary legal standards mean or how they

apply to the facts as given—**[the] strict standard of proof has no application**." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 114 (2011) (*Bryer, J., concurring)* (emphasis added). If claims are patentably indistinct, a patentee should identify the facts they believe were insufficient to meet higher standard to avoid estoppel.

Second, when the specific findings of the previous case show that any disputed fact would land the same way even under a higher standard of proof, the different-burden exception does not apply. *See, e.g.*, *Lane v Sullivan*, 900 F.2d 1247, 1252 (8th Cir. 1990). *Lane* is instructive on why courts should not inflexibly apply the different-burden exception. The plaintiffs were required to provide clear and convincing evidence that they did not understand certain documents in first claim asserting breach of fiduciary duty. *Id*. The adjudicator found not only that they failed to meet this burden, but also that the evidence showed that they did understand the documents. *Id*. The Eighth Circuit held that this specific finding defeated a later malpractice claim, where the standard of proof for the same issue was preponderance of the evidence. The Eighth Circuit stated that the exception did not apply since the burden had "only fallen to preponderance of the evidence from clear and convincing," and the "particular specific findings" of the first court showed that the plaintiff would lose anyway. *Id*., 1253.

Courts can use the robust PTAB record to assess whether applying collateral estoppel applies to a given claim. PTAB final written decisions are detailed.

*Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*, 856 F.3d 1019, 1024 (Fed. Cir. 2017) ("[T]he Board must, as to issues made material by the governing law, set forth a sufficiently detailed explanation of its determinations both to enable meaningful judicial review and to prevent judicial intrusion on agency authority."). Therefore, in many cases the PTAB, while only required to confirm facts by a preponderance of the evidence, may make findings that would show that a petitioner would meet the higher standard.

If Kroy did not identify any specific *fact* underlying the ultimate legal conclusion that might plausibly land differently under the higher standard, estoppel should apply. For example, here, it appears that the original PTAB panel disagreed with Kroy's claim construction and understanding of the prior art. These types of issues will be unaffected by the standard of proof. The patent claims what it claims. The prior art says what it says. Kroy had every opportunity and motivation to put its best case forward at the PTAB and still lost. It would be consistent with the values underlying estoppel to apply the doctrine in these circumstances.

These nuances are why *ParkerVision, Inc. v. Qualcomm Inc.*, even if correct, is distinguishable. 116 F.4th 1345 (Fed. Cir. 2024). In *Parkervision*, the issue in question concerned the Board's specific "factual findings concerning prior art," not the Board's ultimate legal conclusion. *Id.* at 1361. *ParkerVision* even emphasizes this distinction, finding that estoppel extends from "'an affirmance of an *invalidity*

finding.'" *Id*., 1362 (quoting *XY*, 890 F.3d at 1294, adding emphasis). The petitioner-defendant could not argue that the claims were immaterially different because they had survived the very proceeding cited for estoppel. *Id*. On the other hand, in this case, the panel accepts that any differences between the claims are immaterial.

The panel also cites *Grogan v. Garner*, 498 U.S. 279 (1991) for the different-burden exception. *Slip Op.* at 5–6. There, it appeared that the parties were not disputing the relevance of the different-burden exception, but whether the different proceedings had different burdens. *Grogan*, 498 U.S. at 284–85. And that case did not involve administrative proceedings created to be alternatives to litigation.

## III. Estoppel is necessary to prevent vexatious litigation

Collateral estoppel is a practical doctrine. It "protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Nestle USA, Inc v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351 (Fed. Cir. 2018). So when a non-binding exception leads to unfair and impractical results, a court should decline to apply the exception.

Here, the decision creates a roadmap for patentees to circumvent the PTAB and harass defendants: just stagger related claims one year apart, when defendants are barred from challenging claims. 35 U.S.C. § 315(b).

Petitioners often will not be able to avoid harassment simply by challenging all claims because in recognition of Congress's mandate for efficiency, PTAB rules

incentivize limiting challenges to disputed claims. Filing an *inter partes* review petition requires over $50,000 in administrative fees alone. 37 C.F.R. § 42.15(a). There are strict word limits to petitions, making challenging every claim in one petition impossible for many patents. 37 C.F.R. § 42.24(a)(1). And the PTAB will allow multiple petitions on a patent only in the "rare" case, even for petitions involving different claims. *See, e.g.*, *Lifescan, Inc. v. Facet Techs., LLC*, IPR2023-00713, Paper 13 at 16 n.11, 17 (PTAB Sep. 21, 2023) (denying parallel challenge of unasserted claims, rejecting that petition on unasserted claims was needed to avoid surrendering the right to challenge those claims). Thus, for good reason, Defendants focus on asserted claims when filing challenges.

In cases involving different patents, the challenger may be able to file another IPR, where the panel may apply estoppel. But this will be cost-prohibitive to small- and medium-sized companies, which historically have been targeted in over 80% of PAE monetization efforts.[2] In cases involving claims of the same patent, IPR will be unavailable. A challenger could file a reexamination request; however, *res judicata* is not a basis for rejection in reexaminations. M.P.E.P. 2259. Therefore, filing a do-over complaint after losing on identical issues in a first case would be an effective

---

[2] *The impact of bad patents on American business*: Hearing before the Subcomm. on Courts, Intellectual Property, and the Internet, House of Representatives, 115th Congress, (July 13, 2017) (statement by Rep. Issa and testimony of Julie Samuels).

settlement strategy for patentees who suffer no harm from infringement. Estoppel would prevent such behavior by enforcing repose on final decisions. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986)

Unified also foresees this issue arising in the context of continuation patents, where the most dubious claims arise.[3] For example, Unified defeated claim 1 and its dependent, claim 6, of U.S. Patent 10,476,868. *Unified Patents, LLC v. JustService.Net LLC*, IPR2020-01258, Paper 41 (PTAB Feb. 16, 2022) (aff'd on Rule 36, 22-1707). Months later, the patentee obtained a related patent, U.S. Patent 11,425,116. Claim 1 of the '116 Patent effectively recites all but one limitation of claims 1 and 6 of the '868 Patent—any differences make the later claim *broader* than invalidated claim 6. The panel decision suggests that if the patentee files a complaint asserting this claim, the court must ignore the PTAB's ruling that this claim is invalid, and a defendant will have relitigate the case, pay $50,000 for another IPR to get the same result, or, more likely, pay the patentee a slightly lower five-figure sum. For using technology that belongs to the public.

[3] *See, e.g.*, Mark A. Lemley & Kimberly A. Moore, *Ending Abuse of Patent Continuations*, 84 B.U. L. Rev. 63 (2004); Cesare Righi & Timothy Simcoe, *Patenting Inventions or Inventing Patents? Continuation Practice at the USPTO*, 54(3) RAND Journal of Economics, 416 (2023).

Further, applying estoppel places no undue burden on patent owners. At worst, they will simply know to present related infringement theories in a single case. Unified can see no reason other than harassment for them to act differently.

Fairness and pragmatism are the touchstones of collateral estoppel. Having defendants jump through hoops for a result already won undermines the public's interest in "avoiding the cost and vexation of repetitive litigation" and "conserving judicial resources." *Univ. of Tennessee*, 478 U.S. at 798.

## IV. Conclusion

Given the foreseeable risk of exploitation of the decision, Congress's purpose for AIA trials, and the lack of due process concerns, the Court should revisit the panel's conclusion narrowing the scope of estoppel established in *XY*. Specifically, estoppel should extend from PTAB invalidity determinations involving immaterially distinct claims. Thus, rehearing or rehearing *en banc* is appropriate to clarify the scope of estoppel from PTAB final decisions.

Respectfully submitted,

April 25, 2025

By: /s/ *Michelle Aspen*

Michelle Aspen
michelle@unifiedpatents.com
Unified Patents, LLC
4445 Willard Ave., Suite 600
Chevy Chase, MD 20815
(559) 214-3388

**Certificate of Compliance with Type-Volume Limitations**

1. This brief complies with the type-volume limitation of Fed. Cir. R. 40(i)(3). It contains 2,309 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2. This amicus brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

April 25, 2025

*/s/ Michelle Aspen*
Michelle Aspen

**Certificate of Service**

I hereby certify that, on April 25, 2025, I caused to be electronically filed the foregoing UNIFIED PATENTS, LLC'S *AMICUS CURIAE* BRIEF IN SUPPORT OF GROUPON INC.'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC using the Court's CM/ECF filing system.

I certify that all counsel of record in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. *See* Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).

April 25, 2025

*/s/ Michelle Aspen*
Michelle Aspen