# United States Court of Appeals for the Federal Circuit

---

**KROY IP HOLDINGS, LLC,**
*Plaintiff-Appellant*

v.

**GROUPON, INC.,**
*Defendant-Appellee*

---

2023-1359

---

Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-01405-MN, Judge Maryellen Noreika.

---

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

TIMOTHY DEVLIN, Devlin Law Firm LLC, Wilmington, DE, filed a response to the petition for plaintiff-appellant. Also represented by PAUL RICHTER, JR.

THOMAS LEE DUSTON, Marshall, Gerstein & Borun LLP, Chicago, IL, filed a combined petition for panel rehearing and rehearing en banc for defendant-appellee. Also represented by RAYMOND R. RICORDATI, III.

---

Before MOORE, *Chief Judge*, LOURIE, DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL, and CUNNINGHAM, *Circuit Judges*.[1]

MOORE, *Chief Judge,* with whom STOLL, *Circuit Judge*, joins, concurs with the denial of the petition for rehearing en banc.

DYK, *Circuit Judge*, with whom HUGHES, *Circuit Judge*, joins, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

# ORDER

Groupon, Inc. filed a combined petition for panel rehearing and rehearing en banc. A response to the petition was invited by the court and filed by Kroy IP Holdings, LLC. Unified Patents, LLC requested leave to file a brief as amicus curiae which the court granted. The petition was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc was referred to the circuit judges who are in regular active service. The court conducted a poll on request, and the poll failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

FOR THE COURT



August 1, 2025
Date

Jarrett B. Perlow
Clerk of Court

---

[1] Circuit Judges Newman and Stark did not participate.

# United States Court of Appeals for the Federal Circuit

**KROY IP HOLDINGS, LLC,**
*Plaintiff-Appellant*

v.

**GROUPON, INC.,**
*Defendant-Appellee*

2023-1359

Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-01405-MN, Judge Maryellen Noreika.

MOORE, *Chief Judge*, with whom STOLL, *Circuit Judge*, joins, concurs with denial of the petition for rehearing en banc.

The Supreme Court has repeatedly reprimanded us for creating patent-specific departures from well-established principles. Collateral estoppel is a well-established doctrine. The dissent advocates for a patent-specific collateral estoppel rule contrary to Supreme Court precedent. Collateral estoppel does not apply when, as here, the differing standard of proof—preponderance of the evidence before the PTAB versus clear and convincing evidence in district court—materially alters the question of invalidity. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (explaining collateral estoppel does not apply "if

the second action involves application of a different legal standard," such as a different burden of proof); *Grogan v. Garner*, 498 U.S. 279, 284–85 (1991) (explaining collateral estoppel does not apply when a prior judgment was rendered under a preponderance of the evidence standard and the subsequent matter requires proof by clear and convincing evidence); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4422 (3d ed. 2016) ("[A] party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard."). That a patent claim is invalid by a preponderance of the evidence does not mean it is also invalid by clear and convincing evidence.

Policy implications cannot override the desire for uniformity in the application of law across different subject matters. Moreover, litigants can more efficiently and cost-effectively challenge the relevant claims through IPR—including by filing a second petition to cover any claims omitted from the first petition—rather than litigating collateral estoppel in district court. Given the PTAB's grant of the first petition and invalidation of certain claims of the same patent, it would be odd if the PTAB did not also grant the second petition if it presented a nearly identical substantial question of invalidity.

For these reasons, I concur in the denial of en banc.

# United States Court of Appeals for the Federal Circuit

**KROY IP HOLDINGS, LLC,**
*Plaintiff-Appellant*

v.

**GROUPON, INC.,**
*Defendant-Appellee*

2023-1359

Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-01405-MN, Judge Maryellen Noreika.

DYK, *Circuit Judge*, with whom HUGHES, *Circuit Judge*, joins, dissents from denial of petition for rehearing en banc.

We respectfully dissent from the denial of en banc rehearing.

This case presents a significant question: whether, under the Leahy-Smith America Invents Act ("AIA"), decisions of the Patent Trial and Appeal Board ("Board") determining that particular claims are unpatentable have collateral estoppel effect in district court infringement litigation so that patentably indistinct claims are barred. In holding that there is no such collateral estoppel effect, the panel contradicts our earlier decision in *XY, LLC v. Trans*

*Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (holding that IPR unpatentability decisions have "immediate issue-preclusive effect" when affirmed by this court), fails to recognize that Supreme Court precedent makes the application of collateral estoppel dependent on Congressional intent, and undermines the central purpose of the AIA—to make Board decisions a substitute for district court invalidity litigation.

I

The panel's theory is that under common law there is no collateral estoppel effect of a prior action when "a later action . . . requires proof of the same issue by a higher standard." *Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1380 (Fed. Cir. 2025) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4422 (3d ed. 2016)). It follows, the panel reasons, that the different burdens of proof between Board unpatentability proceedings (preponderance of the evidence) and district court invalidity proceedings (clear and convincing evidence) make collateral estoppel unavailable as to Board decisions. *See id.* at 1379–81. In this respect, the panel primarily relies on *Grogan v. Garner*, 498 U.S. 279 (1991), where, in the bankruptcy context, the Supreme Court referenced the burden-of-proof rule but held that collateral estoppel did apply because the burdens were identical. *See id.* at 284–85. But neither *Grogan* nor earlier decisions declining to apply collateral estoppel between criminal and civil proceedings[1] involved proceedings where applying the burden-of-proof rule and denying

---

[1] *See, e.g.*, *One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 234–35 (1972); *Helvering v. Mitchell*, 303 U.S. 391, 397 (1938); *Stone v. United States*, 167 U.S. 178, 188 (1897); *Murphy v. United States*, 272 U.S. 630, 632–33 (1926); *Chantangco v. Abaroa*, 218 U.S. 476, 482 (1910).

collateral estoppel effect would be incompatible with the statutory structure and purpose.

Other circuits have recognized that the burden-of-proof rule is not absolute and that "the value of collateral estoppel in fostering judicial economy and avoiding inconsistent results would be severely compromised if every shift in the burden of proof would make collateral estoppel unavailable." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 731 (2d. Cir. 2001).[2] The Supreme Court has held that traditional rules of collateral estoppel must be tailored to take account of statutory structure and purpose such that the application of collateral estoppel under federal statutes depends on Congressional intent. As the Court concluded in *Astoria Federal Savings & Loan Association v. Solimino*, 501 U.S. 104 (1991), "the question [whether to impose rules of preclusion] is not whether administrative estoppel is wise but whether it is intended by the legislature." *Id.* at 108; *see also Univ. of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 153 (2015) ("Issue preclusion is available unless it is 'evident' that Congress does not want it." (citation omitted)). The Court has further explained that a "clear statement" by the legislature is not necessary to show the legislature's intent to depart from

---

[2] *See also Lane v. Sullivan*, 900 F.2d 1247, 1253 (8th Cir. 1990) (holding that court's finding in first action that plaintiffs failed to disprove fact by clear and convincing evidence had preclusive effect in second action "where the standard of proof ha[d] only fallen to preponderance from clear and convincing"); *Marlene Indus. Corp. v. NLRB*, 712 F.2d 1011, 1016 (6th Cir. 1983) ("[T]he vast majority of courts recognize that a difference in burden of proof is <u>a factor</u> which should be considered in applying the doctrine of collateral estoppel." (emphasis added) (citing Restatement (Second) of Judgments § 28(4) (1982))).

common-law preclusion principles so long as that purpose is evident. *Astoria*, 501 U.S. at 108–09.

In the patent context itself, the Supreme Court has determined that common-law rules of collateral estoppel must be adjusted in view of Congressional purpose, in particular, the purpose of avoiding duplicative litigation as to patent invalidity. In *Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971), the Court held that a patentee is bound by a patent invalidity ruling in a prior suit, overturning its earlier precedent requiring mutuality of estoppel. *Id.* at 350. In doing so, the Court departed from then-established rules of estoppel requiring mutuality because strong policy favored avoidance of duplicative litigation as to patent invalidity. *Id.* at 334–44 (describing a "group of authorities [that] encourage authoritative testing of patent validity" and examining the "economic consequences" of patent litigation). The Court recognized that "[p]ermitting repeated litigation" was both wasteful and unfair—it would divert a defendant's "time and money . . . to relitigation of a decided issue" and reflect "the aura of the gaming table." *Id.* at 329*; see also Lear, Inc. v. Adkins*, 395 U.S. 653, 656, 670–74 (1969) (referencing "the strong federal policy favoring free competition in ideas which do not merit patent protection" in holding that patent licensee was not estopped from attacking validity of licensed patent).

II

Here, whatever the collateral estoppel effect of subsidiary findings by the Board,[3] the Congressional objectives under the AIA can be served only by applying collateral estoppel to the ultimate unpatentability determination despite the difference in the burdens of proof.

---

[3]    *See ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1361–62 (Fed. Cir. 2024).

One of the central purposes of the AIA, Pub. L. No. 112–29, 125 Stat. 284, enacted in 2011, was to allow the U.S. Patent & Trademark Office ("PTO") to reconsider patent grants through the creation of inter partes review ("IPR") and post-grant review proceedings. Congress recognized that the PTO process of initial examination was often inadequate to weed out poor-quality patents and assigned the process of such reconsideration to the Board, an expert body within the PTO. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 360–61 (2018) (explaining that "[s]ometimes . . . bad patents slip through" initial examination and that Congress created IPR to remedy such problems); *Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020) (explaining that Congress provided IPR to "weed out bad patent claims efficiently").

Critically, these procedures were designed to be a more efficient and less expensive alternative to costly district court invalidity litigation. *See Celgene Corp. v. Peter*, 931 F.3d 1342, 1362 n.20 (Fed. Cir. 2019) (explaining that the AIA was designed "to provide an alternative to district court litigation"); H.R. Rep. No. 112-98, at 40 (2011) ("The [AIA] is designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."); 157 Cong. Rec. S5409 (daily ed. Sept. 8, 2011) (statement of Sen. Schumer) ("[T]he [AIA] streamlines review of patents to ensure that the poor-quality patents can be weeded out through administrative review rather than costly litigation.").[4] Congress explicitly contemplated that district

---

[4] *See also* H.R. Rep. No. 112-98, at 48 (describing AIA post-grant review proceedings as "quick and cost effective alternatives to litigation"); S. Rep. No. 110-259, at 20 (2008) (explaining that the Patent Reform Act of 2007, precursor to the AIA, was designed to "give third parties a

courts would refer invalidity issues to the Board, providing that an IPR petition must be filed within one year of district court infringement litigation alleging infringement of the patent, 35 U.S.C. § 315(b), and providing for an automatic stay in district court litigation under certain circumstances if an IPR is pending, *see id.* § 315(a)(2).

IPRs have proven to be both popular and effective.[5] But the Congressional objectives in creating these proceedings cannot be achieved if, as under the panel decision, IPR final decisions affirmed by this court are not given the same effect as district court proceedings.

---

quick, inexpensive, and reliable alternative to district court litigation to resolve questions of patent validity"); 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) ("[E]xtending could-have-raised [IPR] estoppel [in section 315] to privies will help ensure that if an [IPR] is instituted while litigation is pending, that review will completely substitute for at least the patents-and-printed-publications portion of the civil litigation."); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (explaining reexamination "merely shifted to the PTO an issue (patent claim validity) involved in the dispute before the district court").

[5] In a typical year, the PTO receives between 1,000 and 2,000 IPR petitions. Christopher T. Zirpoli & Kevin J. Hickey, Cong. Rsch. Serv., R48016, The Patent Trial and Appeal Board and Inter Partes Review 17 (2024). For example, in the most recent fiscal year (October 1, 2023, through September 30, 2024), the PTO received 1,250 IPR petitions. Patent Trial and Appeal Board Trial Statistics Fiscal Year 2024, at 3, *available at* https://www.uspto.gov/sites/default/files/documents/ptab_aia_fy2024_roundup.pdf. Twenty-six percent of those IPR petitions were entirely successful (i.e., the Board held all challenged claims unpatentable). *Id.* at 10.

While an IPR decision of unpatentability will result in the PTO cancelling the original claims, *see* 35 U.S.C. § 318(b), IPRs focus on a limited number of claims, and the challenged patent may have dozens and sometimes hundreds of claims, many of which are virtual copies of claims in the IPR, i.e., there are claims that are not patentably distinct from each other.

The facts of this case are exemplary. The patentee, Kroy IP Holdings, LLC, sued Groupon, Inc. in district court for allegedly infringing thirteen of the 115 claims of the '660 patent. J.A. 2. We affirmed a decision of the Board determining in an IPR that twenty-one of the 115 claims were unpatentable as obvious. *Kroy IP Holdings, LLC v. Groupon, Inc.*, 849 F. App'x 930 (Fed. Cir. 2021) (Mem.). Kroy then filed a second amended complaint, alleging infringement of fourteen different claims of the same patent, none of which was included in the original complaint and none of which was involved in the IPR proceedings. J.A. 5. The new claims repeat the limitations of the claims held unpatentable, combining the limitations of multiple unpatentable claims or simply adding insignificant new limitations. *See* J.A. 105–09 (claims); J.A. 11–34 (district court discussing claim similarities). Indeed, some of the new claims are virtually identical to the originally asserted, unpatentable claims. *See* J.A. 17, 22.

In both IPR and district court proceedings, patentably indistinct claims are routinely held barred by collateral estoppel from an earlier decision of the same tribunal. In subsequent Board proceedings, it is well established that collateral estoppel applies to claims adjudicated by the Board to be unpatentable and also to "related claims that present identical issues of patentability," i.e., patentably indistinct claims. *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018); *see also Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) ("It is well established that patent claims need not be identical for collateral estoppel to apply."). Similarly,

patentably indistinct claims are barred in subsequent district court proceedings as a matter of collateral estoppel if the original claims were held invalid in earlier district court adjudications. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); *Soverain Software LLC v. Victoria's Secret Brand Mgmt., LLC*, 778 F.3d 1311, 1319–20 (Fed. Cir. 2015).

In *XY*, we also held that collateral estoppel extends between Board and district court decisions, explaining that "[our] affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-pending actions." 890 F.3d at 1294–95. The panel decision reaches a contrary result. By not applying collateral estoppel to IPR decisions in later district court proceedings, the panel decision permits repeated litigation of a decided issue: the unpatentability of the claims finally held unpatentable in IPR decisions affirmed on appeal. The panel decision effectively allows relitigation of the same claims so long as they add other indistinct limitations. This cannot be correct. It defeats the central purpose of the AIA: to make Board unpatentability proceedings a substitute for district court invalidity proceedings.

In other words, Congress intended IPR decisions to be, like district court invalidity actions, a kind of in rem proceeding as to issues of patentability. *See Blonder-Tongue*, 402 U.S. at 340–44 & n.36; *Regents of the Univ. of Minnesota v. LSI Corp.*, 926 F.3d 1327, 1343 (Fed. Cir. 2019) (additional views) ("IPR is an in rem proceeding.").[6] Denying

---

[6] *See also* Robert P. Merges, *Patent Infringement, Private Law, and Liability Standards*, 76 UC Law J. 161, 166 n.14 (2024) ("If a court finds a patent 'not invalid,' it is valid between the two parties, but anyone else can attack validity. If a patent is found *invalid*, it is dead to all.

collateral estoppel effect to affirmed IPR unpatentability determinations in later district court litigation contravenes the Congressional objective of conclusively determining the status of the claims for all purposes.

### III

Because parties routinely litigate the same or similar claims before both the Board and the district court, this issue of collateral estoppel arises frequently in district court proceedings.[7]

Commentators have recognized that the panel decision has "significant implications" because it "allows patentees to pursue claims in district court that were not at issue in

---

Invalidity is in rem; 'not invalid' is in personam, applying only to the parties.").

[7] *See, e.g.*, *Think Prods., Inc., v. ACCO Brands Corp.*, 419 F. Supp. 3d 1078, 1083–88 (N.D. Ill. 2019), *aff'd*, 854 F. App'x 374 (Fed. Cir. 2021) (Mem.); *M2M Sols. LLC v. Sierra Wireless Am., Inc.*, No. 14-cv-01102-RGA, 2021 U.S. Dist. LEXIS 62238, at *5–*7 (D. Del. Mar. 31, 2021); *Capella Photonics, Inc. v. Ciena Corp.*, 546 F. Supp. 3d 977, 984–86 (N.D. Cal. 2021); *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-cv-01858-EMC, 2020 WL 4923697, at *6 (N.D. Cal. Aug. 21, 2020); *Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 257 (D. Mass. 2019); *Fellowes, Inc. v. ACCO Brands Corp.*, No. 10 cv 7587, 2019 WL 1762910, at *2–*8 (N.D. Ill. Apr. 22, 2019); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 489–91 (D. Del. 2022); *Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*, Ltd, 403 F. Supp. 3d 571, 601–02 (E.D. Tex. 2019); *see also Blair v. Alstom Transp., Inc.*, No. 16 Civ. 3391 (PAE), 2020 WL 4504842, at *6 (S.D.N.Y. Aug. 5, 2020) (denying leave to assert unadjudicated claim that was not meaningfully distinct from claims held unpatentable).

the IPRs, even if they are similar to the already invalidated claims." Ehsun Forghany & Paul Choi, *Federal Circuit Refuses to Extend IPR Estoppel to Unadjudicated Patent Claims*, NAT'L L. REV. (Mar. 12, 2025). The panel decision could, moreover, create significant opportunities for patentees to evade the effect of IPR decisions as to unpatentability. Commentators and amici have recognized that the panel decision will cause patentees to take advantage of this disparity in collateral estoppel effect between district court and Board actions by withholding patentably indistinct claims from district court proceedings until an IPR is completed or adding patentably indistinct claims to a continuation application.[8] This will "effectively preclud[e] a would-be petitioner from mounting an IPR challenge" as to the unadjudicated claims, Jason Houdek & Mike Etienne, *Reconsidering IPR Strategies in Light of* Kroy IP Holdings v. Groupon, IPWATCHDOG (Mar. 19, 2025), and give the patentee a "tactical advantage," Art Licygiewicz & Ryan Short, *How Fed. Circ. Ruling Complicates Patent Infringement Cases*, LAW360 (Mar. 18, 2025).

We respectfully dissent from this court's denial of the petition for en banc rehearing.

---

[8] *See* Amicus Br. 7–9; Rashad L. Morgan, *Don't (Es)stop Me Now: The Federal Circuit Clarifies Collateral Estoppel Analysis for Non-Challenged Patent Claims in IPRs*, CROWELL (Feb. 18, 2025) ("For patentees filing first in district court, . . . amending the complaint after the IPR proceeding to include previously unasserted and unadjudicated claims could be part of the long-term calculus.").